UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER E. CORTES,                        Case No. 18-13347

      Plaintiff,                        Stephanie Dawkins Davis
v.                                        United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 19, 23)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On October 25, 2018, plaintiff Heather E. Cortes filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (ECF No. 1).  This matter is before the Court on cross-motions for

summary judgment.  (ECF Nos. 19, 23).  Cortes also filed a reply in support of her

motion for summary judgment.  (ECF No. 26).

### B.    Administrative Proceedings

Cortes filed applications for a period of disability, disability insurance

benefits, and supplemental security income on June 21, 2012, alleging disability

beginning June 1, 2011.  (Tr. 21).[1]  The Commissioner denied Cortes's claim at the

initial level on September 5, 2012.  (Tr. 84-99).  Cortes requested a hearing, and on

April 16, 2014, she appeared with counsel before Administrative Law Judge

("ALJ") Earl Ashford, who considered the case *de novo*.  (Tr. 39-68).  In a decision

dated April 25, 2014, the ALJ found that Cortes was not disabled.  (Tr. 21-34).

The ALJ's decision became the final decision of the Commissioner on September

17, 2015, when the Appeals Council denied Cortes's request for review.  (Tr. 2-7);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

Cortes then commenced an action seeking judicial review of the

Commissioner's decision on November 19, 2015.  (Tr. 645-48).  On February 22,

2017, the undersigned issued a Report and Recommendation recommending that

the Commissioner's decision be reversed and that Cortes's case be remanded to the

Social Security Administration to obtain the opinion of a qualified medical advisor

on the issue of medical equivalence as to Cortes's mental impairments and for

proper evaluation of the treating physicians' opinions.  (Tr. 649-89.)  District Judge

George Caram Steeh accepted this Report and Recommendation, reversed the

Commissioner's decision, and remanded the matter for further proceedings

consistent with the Report and Recommendation.  (Tr. 690-92).  The Appeals

---

[1] The Administrative Record appears on the docket at entry number 14.  All references to the same are identified as "Tr."

Council subsequently vacated the ALJ's April 25, 2014 decision and remanded the matter back to the ALJ for further proceedings consistent with the court's order.[2] (Tr. 693-97).

On remand, Cortes appeared with counsel and testified at another hearing before ALJ Ashford on March 20, 2018.  (Tr. 576-617).  Medical expert Jeffrey N. Andert, Ph.D., Cortes's treating physician, Jessica Sharon, D.O., and a vocational expert also testified at the hearing.  The ALJ issued a partially favorable decision on June 28, 2018, concluding that Cortes was not disabled prior to September 23, 2015, but became disabled on that date and continued to be disabled through the date of the decision.  (Tr. 514-47).  Cortes now appeals the ALJ's determination that she was not disabled from the alleged onset date of June 1, 2011 through September 22, 2015.  (ECF No. 19, PageID.2564).

## II.    FACTUAL BACKGROUND

Cortes, born in 1978, was 33 years old on the alleged disability onset date. (Tr. 43).  She lived in Carleton, Michigan with her husband.  (Tr. 43).  Cortes attended about two years of college and has past relevant work as a customer

---

[2] It appears that the ALJ overlooked the portion of the court's remand order for proper evaluation of the treating physicians' opinions.  Notably, at the outset of his recent decision, the ALJ states, "Pursuant to the District Court remand order, the Appeals Council has directed the undersigned to obtain the opinion(s) of a medical advisor on the issue of equivalence as to the claimant's mental impairments." (Tr. 518).  The ALJ does not acknowledge the order for proper evaluation of the treating physicians' opinions, and as further discussed below, his assessment of Cortes's treating physicians' opinions in the recent decision for the period prior to September 23, 2015, are nearly identical to the assessments that he made in the prior decision.

service representative, front desk clerk, and data entry/routing clerk. (Tr. 44-47, 535). Cortes alleges that she stopped working and is disabled because of bipolar disorder, panic disorder, back pain, pancreatitis, and chronic obstructive pulmonary disease ("COPD"). (Tr. 1012-13).

The ALJ applied the five-step disability analysis and found at step one that Cortes had not engaged in substantial gainful activity since the alleged onset date of June 1, 2011. (Tr. 520). At step two, the ALJ found that Cortes had the following severe impairments: degenerative disc disease with low back pain and lumbar neuralgia; dextroscoliosis; obesity; depressive disorder; anxiety disorder; COPD, variously diagnosed as emphysema, asthma, chronic bronchitis, and recurrent pneumonia; pulmonary fibrosis, status-post acute respiratory distress syndrome; chronic pancreatitis with pseudocyst; diabetes mellitus with polyneuropathy; anemia; anorexia/malnutrition; and chronic reflex esophagitis. (Tr. 520-21). However, at step three, the ALJ determined that Cortes's impairments did not singly or in combination meet or medically equal one of the listings in the regulations. (Tr. 521-24).

Thereafter, the ALJ assessed Cortes's residual functional capacity ("RFC") prior to September 23, 2015 as follows:

> After careful consideration of the entire record, the undersigned finds that . . . the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: She must be

> allowed to sit or stand, alternating position no more
> frequently than every 30 minutes.  She has postural
> limitations of no climbing of ladders, ropes, or scaffolds;
> occasional climbing of ramps and stairs; and occasional
> balancing, stooping, kneeling, crouching and crawling.
> She can frequently use the bilateral lower extremities for
> operation of foot controls.  She has a manipulative
> limitation of frequent use of the bilateral upper
> extremities for reaching, handling, and fingering.  She
> also has environmental limitations to avoid concentrated
> exposure to hazards, such as moving machinery,
> unprotected heights, extreme cold, extreme heat,
> humidity, wetness, commercial driving, vibrations, and
> irritants such as fumes, odors, dust, gases.  She is limited
> to work that involves simple, routine, and repetitive tasks
> in a work environment free from fast paced production
> requirements, such as moving assembly lines and
> conveyor belts, and involving only work related
> decisions, with few if any workplace changes.  Finally,
> she is limited to no interaction with the general public,
> and only occasional interaction with coworkers and
> supervisors.

(Tr. 524-30).  The ALJ then assessed that Cortes had an RFC for a limited range of

sedentary work beginning on September 23, 2015.  (Tr. 530-34).  At step four, the

ALJ found that Cortes was unable to perform any past relevant work.  (Tr. 534-35).

At step five, the ALJ denied Cortes benefits prior to September 23, 2015, because

he found that there were jobs that exist in significant numbers in the national

economy that Cortes could have performed.  (Tr. 535-36).  He further found that

Cortes became disabled on September 23, 2015 because there were no longer jobs

existing in significant numbers in the national economy that she could perform.

(Tr. 536).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (An "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at

475. "The substantial evidence standard presupposes that there is a 'zone of

choice' within which the [Commissioner] may proceed without interference from

the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal

quotation marks omitted) (quoting *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record

only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either

the ALJ or the reviewing court discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 F. App'x 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the claimant is engaged in significant gainful activity; (2) the claimant has any severe impairment(s); (3) the claimant's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the claimant can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

Cortes appeals the ALJ's determination that she was not disabled from June 1, 2011 through September 22, 2015.  (ECF No. 19, PageID.2564).  She contends that (1) the ALJ's analysis of the opinion evidence is not supported by substantial evidence; (2) the ALJ's subjective symptom analysis is flawed; (3) the ALJ's RFC assessment is not supported by substantial evidence; and (4) the ALJ erred at step five of the sequential evaluation process.  (ECF No. 19, PageID.2562, 2571-2586.)

1.     Opinion Evidence

Cortes challenges the ALJ's assessment of her treating physicians' opinions, namely, that the ALJ erroneously discounted their opinions without good reason while giving greater deference to the opinions of the state-agency non-examining physician and the consultative examining physician.  (ECF No. 19, PageID.2571-2581).  The Court agrees for the reasons discussed below.

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques;" and (2) "not inconsistent with the other substantial evidence in [the]

case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source

opinion is not entitled to controlling weight, the ALJ must give good reasons for

the weight accorded to the opinion. The reasons provided must be "supported by

the evidence in the case record, and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc.

Sec*., 710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors,

which include (1) the length of the treatment relationship and frequency of

examination, (2) the nature and extent of the treatment relationship, (3)

supportability of the opinion, (4) consistency of the opinion with the record as a

whole, and (5) the specialization of the treating source. *Id.*; *see also Wilson,* 378

F.3d at 544; 20 C.F.R. § 404.1527(c). Failure to analyze a treating source opinion

under the two-prong controlling weight test amounts to the failure to provide good

reasons for giving that opinion less than controlling weight. *Gayheart* at 376-77.

The ALJ summarized and assessed the November 21, 2013 opinion of Dr.

Navin Jain, M.D., Cortes's treating pulmonologist as follows:

> As for the opinion evidence, Dr. Navin Jain, M.D., a
> pulmonologist at Monroe Pulmonary, opined on
> November 21, 2013, that the claimant has pulmonary
> fibrosis limiting her to sitting up to two hours in a day

and standing up to five minutes. He indicated that the claimant could walk less than one city block. He indicated that the claimant could not lift any weight and would need an unscheduled break of 30 minutes every hour. He also stated she would likely miss more than four days a month (Ex. 8F). The opinion of Dr. Jain is given little weight. While the medical evidence of record does support some respiratory problems since the claimant's bout of pneumonia in April 2013, these limitations are far in excess of what is supported by the evidence of record. The claimant admitted to Dr. Jain that she continued to smoke at an appointment on February 18, 2014. She has not required any additional emergency room visits or hospitalizations for respiratory problems since her release from the hospital in April 2013. Allowing the option to sit or stand while performing work and environmental limitations to avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, and gases, extreme cold, extreme heat, humidity, and wetness should account for the claimant's lingering pulmonary problems despite her continuing to smoke.

(Tr. 528).

The ALJ's assessment of Dr. Jain's opinion is identical to the assessment that he provided in his April 25, 2014 decision. (*See* Tr. 30-31). The undersigned reviewed the ALJ's 2014 assessment of Dr. Jain's opinion on appeal and concluded that the ALJ failed to give the requisite "good reasons" when he discounted it. (Tr. 676). The undersigned reasoned, in relevant part:

Although the ALJ made an effort to review Dr. Jain's treatment records, the undersigned concludes that the ALJ did not offer the necessary illumination as to why he discounted his opinion. . . .The ALJ's stated reasons for giving Dr. Jain's opinions little weight are as follows: (1) Dr. Jain's opinion was not supported by the objective

13

evidence of record, (2) plaintiff continued to smoke despite Dr. Jain's advice to quit, and (3) plaintiff did not require any further emergency room visits or hospitalizations following her April 2013 hospitalization for acute respiratory distress and pneumonia. The ALJ does not create a logical bridge between the evidence and these conclusions. While the ALJ discusses Dr. Jain's treatment records, he does not explain how his opinions are unsupported by the record. Moreover, the undersigned does not understand how plaintiff's failure to quit smoking undermines Dr. Jain's opinions. While this might certainly be a factor to be considered in the assessment of plaintiff's credibility, neither the ALJ nor the Commissioner explain how this fact suggests that Dr. Jain's opinions are not supported. Finally, while plaintiff did not require any further emergency treatment, again, it is not apparent why this fact undermines Dr. Jain's opinions. Even if Dr. Jain's opinion was not entitled to controlling weight, it was entitled to deference in view of the longitudinal medical record. Accordingly, proper evaluation of Dr. Jain's opinion necessitates remand.

(Tr. 678-79).

The arguments that the Commissioner advances in the instant motion do not cure the deficiencies of the ALJ's assessment of Dr. Jain's opinion. For instance, while it is important to read an ALJ's assessment of a physician's opinion together with the ALJ's decision as a whole as the Commissioner asserts, (ECF No. 23, PageID.2604 (quoting *Vitale v. Comm'r of Soc. Sec.*, No. 16-12654, 2017 WL 4296608, at *2 (E.D. Mich. Sept. 28, 2017))), this is not a case where doing so cures the deficiency, as the ALJ's discussion of the medical evidence contains points that favor the positions of both Cortes and the Commissioner. The

Commissioner also argues that the ALJ reasonably discounted Dr. Jain's opinion in light of the lack of hospitalizations or emergency room treatment and the fact that Cortes continued to smoke. As the undersigned previously reasoned, and as the case law cited by the Commissioner indicates, the lack of hospital treatment and Cortes's continued smoking might certainly be factors to be considered in the assessment of Cortes's subjective complaints, but neither the ALJ nor the Commissioner explain how these facts suggest that Dr. Jain's opinion is not supported. Accordingly, a remand for proper evaluation of Dr. Jain's opinion is in order.

The ALJ's assessment of the opinion of Cortes's treating physician, Dr. Jessica Sharon, DO, suffers from the same fatal flaw. The ALJ summarized and assessed Dr. Sharon's November 6, 2013 opinion as follows:

> Dr. Jessica Sharon opined on November 6, 2013, that the claimant has bipolar disorder, panic disorder, posttraumatic stress disorder, and chronic low back pain that limits her to being off task 25 percent or more of the workday and incapable of even "low stress" jobs. She further limited the claimant to sitting no more than 30 minutes at a time, standing no more than 10-15 minutes at a time and walking less than a city block. Dr. Sharon indicated that the claimant could sit up to six hours in a workday and stand/walk less than two hours. She indicated that the claimant would likely need unscheduled breaks of 5-10 minutes once an hour. She opined that the claimant could lift up to 10 pounds occasionally and rarely up to 20 pounds. Dr. Sharon opined that the claimant could never twist, stoop, squat, or climb ladders, and could rarely climb stairs. She also

indicated that the claimant would likely miss four or
more days per month.  (Exhibit 7F).  The opinion of Dr.
Sharon is given little weight.  She admits in the
completed form that she has only treated the claimant on
two occasions. Treatment notes reflect that the claimant
first treated with Dr. Sharon on September 11, 2013. At
that time, she reported stable moods with her current
medication regimen. She requested Xanax to help with
sleep and panic attacks. Dr. Sharon prescribed the
claimant Xanax as requested, adding only five extra pills
to account for the panic attacks she was reportedly
having a few times a month. Dr. Sharon did not treat the
claimant for her low back pain and instead noted that she
was in treatment with pain management (Exhibit 10F).
Additionally, with respect to the portion of Dr. Sharon's
opinion regarding mental health limitations, the
undersigned notes that she is a family practitioner and
such opinions are outside her field of specialty.  Notably,
Dr. Sharon testified at the hearing that she had recently
referred the claimant to a psychiatrist for management of
her mental health impairments.  As such, with respect to
the claimant's mental health impairments and resulting
limitations, greater weight has been given to the opinions
of reviewing and non-examining psychological experts as
described in this decision.

(Tr. 528-29).

The ALJ's assessment of Dr. Sharon's opinion is identical to the assessment

that he provided in his April 25, 2014 decision, except for the last portion

regarding Dr. Sharon's opinion on Cortes's mental health limitations.  (*See* Tr. 31).

The undersigned reviewed the ALJ's April 25, 2014 assessment of Dr. Sharon's

opinion on appeal and concluded that the ALJ did not provide sufficiently good

reasons for giving it little weight.  (Tr. 680).  The undersigned reasoned:

16

> Notably, plaintiff was seen in Dr. Sharon's office on more than two occasions before her opinion was issued. She also received treatment by a nurse practitioner in Dr. Sharon's office, Kristi Ramirez, on April 11, 2013, February 21, 2013, and January 24, 2013. (Dkt. 13-7, Pg ID 550-555).[3]  The conclusion that plaintiff had "stable moods" with her current medication regimen does little to illuminate the bases for the ALJ's decision to give this opinion little weight.  The addition of more Xanax for panic attacks suggests a worsening of symptoms, but the ALJ seems to suggest that plaintiff's symptoms had not sufficiently worsened.  It is not clear how or why this undermines Dr. Sharon's opinion.  Again, as with Dr. Jain, even if Dr. Sharon's opinion was not entitled to controlling weight, it was entitled to deference in view of the longitudinal medical record.  Accordingly, proper evaluation of Dr. Sharon's opinion necessitates remand.

(Tr. 680-81).

In his brief in support of his Motion for Summary Judgment, the Commissioner argues that Dr. Sharon was not a "treating source" at the time she issued her November 2013 opinion and responds to Cortes's arguments regarding the ALJ's assessment thereof.  However, as seen above, the undersigned previously disposed of the Commissioner's argument that Dr. Sharon was not a "treating source," and none of the other arguments advanced by the Commissioner

---

[3] Nurse practitioners are not acceptable medical sources and thus their "opinions" are not entitled to controlling weight. SSR 06-03p.  Opinions from "other sources" may be considered in determining the severity of a plaintiff's impairment and how it affects his or ability to work, but they are not entitled to the deference afforded to treating source opinions.  20 C.F.R. § 404.1513(d); *see Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed.Appx. 426, 435 (6th Cir. 2014).  The undersigned fails to see how this limitation on the "opinions" of a nurse practitioner affect the longitude of treatment by a treating physician such as Dr. Sharon.

address the deficiencies of the ALJ's assessment that the undersigned previously identified.

With regard to the ALJ's new assessment of the mental health portion of Dr. Sharon's opinion, Cortes argues that it is clear that Dr. Sharon was treating her mental impairments.  She also cites cases recognizing that primary care physicians treat mental disorders and another case finding that a physician's lack of mental-health specialization does not disqualify him from opining on a claimant's mental status.  (ECF No. 19, PageID.2575 (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Khaleck v. Astrue*, No. CIV S-09-1726 DAD, 2010 WL 3943546, at *5 (E.D. Cal. Oct. 7, 2010); *Wert v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 935, 946 (S.D. Ohio 2016))).  The Commissioner counters that the Regulations, 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5), expressly require an ALJ to consider a treating physician's specialization in assessing his opinion.  The Commissioner also cites a case from this District, in which the court found that it was appropriate for the ALJ to discount the treating physician's opinion on a claimant's mental impairment on the basis that it was outside the physician's specialty.  (ECF No. 23, PageID.2610 (citing *Chicora v. Comm'r of Soc. Sec.*, No. 2:15-cv-12690, 2016 WL 4746223, at *10 (E.D. Mich. Aug. 8, 2016), *report and recommendation adopted*, No. 15-cv-12690, 2016 WL 4729661 (E.D. Mich. Sept. 12, 2016))).

In this case, the ALJ's decision to discount Dr. Sharon's opinion on Cortes's mental health limitations is not well-taken. Dr. Sharon's lack of specialization in mental health is indeed a valid consideration under the Regulations. Without further explanation, however, the ALJ gives greater weight to the opinions of the "reviewing and non-examining psychological experts as described in this decision." (Tr. 529).

The opinions to which it appears the ALJ gave greater weight are those of Jeffrey N. Andert, Ph.D., Julia A. Czarnecki, MA, LLP, and Nick Boneff, Ph.D., LP. (*See* Tr. 533). On March 26, 2016, Ms. Czarnecki and Dr. Boneff examined Cortes and determined that "[a]t the time of this exam she is not evidencing any psychiatric problems that would prevent her from engaging in work-related activities, following 2 or 3 step directions, or appropriately interacting with others." (Tr. 1624-26). This opinion explicitly relates to Cortes's condition on March 26, 2016, and provides no clarity on Cortes's mental health limitations spanning June 1, 2011 to September 22, 2015, the alleged disability period relevant in this matter.

Dr. Andert, an impartial medical expert, reviewed Cortes's medical record and testified at the March 20, 2018 administrative hearing. His testimony indicates that he reviewed Cortes's longitudinal medical record and that his opinion relates to Cortes's condition over the entire alleged period of disability, including the

period relevant here.  (Tr. 597-602).  Thus, Dr. Andert's opinion does not suffer

from the same temporal deficiency as Ms. Czarnecki and Dr. Boneff's opinion.

The ALJ correctly recognized that it is possible to give greater weight to a non-

examining physician's opinion than a treating physician's opinion after the

consideration of multiple factors like the supportability of the opinion, the

opinion's consistency with the record evidence, and the degree of specialization

involved.  (Tr. 533).  Lacking here, however, is any meaningful discussion of the

supportability or consistency of either Dr. Sharon's or Dr. Andert's opinions from

the ALJ.  Accordingly, for this and the reasons previously given, remand for a

proper evaluation of Dr. Sharon's November 6, 2013 opinion is warranted.

        2.    Cortes's Panic Attacks

Cortes also argues that the ALJ failed to articulate why he rejected her

testimony and the record evidence regarding her panic attacks.  (ECF No. 19,

PageID.2577-78).  In making this argument, Cortes cites records from her

treatment with Drs. Sharon and Arun Gupta, M.D., Dr. Sharon's hearing testimony

that she assigned certain functional limitations to Cortes because of her panic

attacks, a letter written by her husband that discusses her panic attacks, and Dr.

Andert's testimony regarding her panic attacks.  (ECF No. 19, PageID.2577-78

(citing Tr. 442-49, 495, 591, 594, 600-01, 1087)).  The Commissioner points out

that the ALJ did discuss much of this and other evidence regarding Cortes's panic

attacks in his decision.  The Commissioner also argues that the ALJ relied on the opinions issued by Dr. Boneff, Ms. Czarnecki, and Dr. Andert, all of which indicated that Cortes was not disabled from a mental health perspective.  (ECF No. 23, PageID.2619-2620).  Both parties are correct in certain respects.  Here, the ALJ discussed testimony and mental health records related to Cortes's panic attacks, but he did not explicitly provide a basis for rejecting the evidence favorable to Cortes in this regard.  Instead, he discounted and accorded little weight to Dr. Sharon's opinion and accorded great weight to Dr. Andert's opinion.  Drs. Sharon and Andert both considered Cortes's panic attacks and reached very different conclusions regarding Cortes's functional limitations resulting from the attacks. As discussed above, the ALJ's reasoning for crediting Dr. Andert's opinion over Dr. Sharon's opinion is deficient.  On remand, the Court expects that a proper evaluation of Dr. Sharon's opinion will in turn illuminate the ALJ's evaluation of Cortes's panic attacks.

### 3.    Cortes's Subjective Complaints

Cortes contends that the ALJ's analysis of her subjective complaints is flawed.  (ECF No. 19, PageID.2581-84).  Specifically, Cortes argues that the ALJ improperly discounted her testimony regarding her panic attacks, limited daily activities, fear of leaving the house, and need for naps due to a lack of oxygen. She also argues that the ALJ's analysis contains only boilerplate language and does

not address any of the factors enumerated in 20 C.F.R. § 404.1529(c) and Social

Security Ruling ("SSR") 16-3p.  Cortes then cites a slew of record evidence in

support of her complaints.  According to Cortes, the ALJ "fail[ed] to provide an

accurate and logical bridge between the evidence and the result."  (ECF No. 19,

PageID.2584 (quoting *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829

(E.D. Mich. 2017))).

The Commissioner counters that the ALJ's evaluation of Cortes's subjective

complaints is supported by substantial evidence.  The Commissioner argues that

the ALJ relied on the opinions of the examining and non-examining physicians and

asserts that the ALJ considered much of the evidence advanced by Cortes.

According to the Commissioner, "the 'logical bridge' requirement means that the

ALJ must provide some analysis of the evidence – as the ALJ did here – rather

than simply giving a cursory summary."  (ECF No. 23, PageID.2616-2622 (citing

cases)).

"A claimant's testimony may be discounted if it is contradicted by the

medical reports and other evidence in the record."  *Harley v. Comm'r of Soc. Sec.*,

485 F. App'x 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a

claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus

on the consistency of the complaints with the other evidence in the record.

*Barncord v. Comm'r of Soc. Sec.*, No. 2:16-cv-389, 2017 WL 2821705, at *8 (S.D.

Ohio June 30, 2017).  "SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment."  *Coffey v. Comm'r of Soc. Sec.*, No. 1:16-cv-222-SKL, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017).  As to a claimant's subjective symptoms, the regulations require an ALJ to consider several factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (S.S.A. Mar. 16, 2016) ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

Cortes's subjective complaints will necessarily have to be re-assessed in full after a proper evaluation of Dr. Jain's and Dr. Sharon's opinions.  However, the Court finds that like the ALJ's assessment of the opinion evidence, clarity and articulation is also lacking in the ALJ's assessment of Cortes's subjective

complaints.  In his decision, the ALJ stated that after careful consideration of the

evidence, he found that Cortes's statements regarding the intensity, persistence,

and limiting effects of her symptoms were not fully supported prior to September

23, 2015.  He then recited portions of the hearing testimony and record evidence,

weighed the opinion evidence, and concluded:

> In sum, the residual functional capacity is supported by
> the totality of the evidence, including the claimant's
> treatment history, her medication use, the effectiveness of
> her treatment, and her activities of daily living prior to
> September 23, 2015.  Although the evidence establishes
> underlying medical conditions capable of producing
> some limitations, the substantial evidence of record does
> not confirm disabling limitations arising from these
> impairments, nor does it support a conclusion that the
> objectively determined medical conditions are of such
> severity that they could reasonably be expected to give
> rise to disabling limitations prior to September 23, 2015.
> In reaching this conclusion, the undersigned took into
> consideration the entirety of the medical record, the
> opinion evidence, and the statements of the claimant at
> [the] hearing and found in disability and functions
> reports. . . .

(Tr. 524-30).

While the ALJ did recite evidence regarding Cortes's symptoms and the

medications and treatments she used to manage or relieve those symptoms, missing

from the ALJ's decision is any synthesis or analysis of that evidence or Cortes's

activities of daily living that enables the Court to meaningfully review the ALJ's

cursory determination that Cortes's subjective complaints were not fully supported.

"An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Meyer v. Comm'r of Soc. Sec.*, No. 10-cv-12963, 2011 WL 3440152, at \*9 (E.D. Mich. Jun. 9, 2011) (quoting *Lowery v. Comm'r of Soc. Sec.*, 55 F. Appx. 333, 339 (6th Cir. 2003)).  A court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result." *Id*. (citations and internal quotation marks omitted).  The ALJ must build that bridge on remand.

### 4.    Cortes's Other Arguments

Cortes's remaining arguments regarding the ALJ's assessment of her RFC and step-five determination will likely be resolved on remand.  In this light, and in the interest of judicial economy, the Court will briefly address a couple of those arguments.

First, Cortes argues that the ALJ erred by affording great weight to Dr. Andert's opinion but failing to include one of the limitations assessed by Dr. Andert in the RFC.  (ECF No. 19, PageID.2584-85).  Specifically, Dr. Andert opined that Cortes would be limited to working with small groups of coworkers – probably no more than six (Tr. 599), and the ALJ limited Cortes to only occasional interaction with coworkers (Tr. 525).  Cortes's argument in this regard is unavailing, as an ALJ is not required to adopt all of a non-examining source's

findings, even if the ALJ gives the opinion great weight. *See Smith v. Comm'r of Soc. Sec.*, Case No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."). Cortes relies on SSR 96-8p, which provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." (ECF No. 19, PageID.2585, ECF No. 26 (citing SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996))). In this instance, the Court does not find that the minimal difference in coworker limitations assessed by Dr. Andert and the ALJ creates the kind of conflict that, standing alone, warrants remand. However, to the extent that the ALJ continues to assign significant weight to Dr. Andert's opinion on remand but does not include Dr. Andert's coworker limitation in the RFC, the ALJ should include an explanation in his decision.

Finally, Cortes argues that the ALJ erred at step five of the sequential evaluation process because the surveillance system monitor job identified by the ALJ as one that Cortes could perform requires constant attention, but the ALJ found that Cortes had moderate limitations in maintaining concentration, persistence, or pace, and the vocational expert explained that such a job would not allow for off-task behavior. Cortes argues that the inspector job is therefore the

only job remaining that she could perform, and the vocational expert testified that there are not a significant number of inspector jobs. (ECF No. 19, PageID.2585-2586). Here, however, the RFC assessed by the ALJ, as it currently stands, accounts for Cortes's limitations in concentration, persistence, or pace by limiting her to simple, routine, and repetitive tasks free of any fast-paced production requirements, and it does not include a limitation for off-task behavior. The ALJ included all of the RFC's limitations in his hypothetical to the vocational expert, and the vocational expert testified that an individual with Cortes's RFC could perform the surveillance system monitor job, of which there are 17,000 in the national economy. (Tr. 603-04). This is more than sufficient for the Commissioner to carry his limited burden at step five. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (holding that 6,000 jobs in the national economy was sufficient to sustain the Commissioner's burden). Accordingly, there is no error at step five.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** plaintiff's motion for summary judgment, **DENIES** defendant's motion for summary judgment, and **REMANDS** the case to the Commissioner pursuant to Sentence Four for a proper evaluation of the opinion evidence and Cortes's subjective complaints and for further analysis and proceedings consistent with this Opinion.

**IT IS SO ORDERED**.

Date: May 29, 2020                           s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States District Judge